UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:21-CV-00006-HBB

SETH R.[1]  PLAINTIFF

VS.

FRANK BISIGNANO, ACTING
COMMISSIONER SOCIAL SECURITY[2]  DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

I.  **BACKGROUND**

Before the Court is the Complaint (DN 1) of Seth R. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff and Defendant have filed briefs (DN 18, 19), and Plaintiff has filed a reply (DN 20).[3]  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

II.  **FINDINGS OF FACT**

In November 2017, Plaintiff filed applications for children's disability insurance benefits and supplemental security income (Tr. 11, 465-68, 469-78).  In both applications, Plaintiff alleged that he became disabled on September 19, 1995, as a result of liver transplant, common bowel duct reconstruction, polycystic kidney disease, chronic hematuria, depression, anxiety, attention deficit

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.
3 Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 21).

hyperactivity disorder ("ADHD"), fatigue, and chronic pain syndrome (Tr. 11, 177-78, 191-92). The application was denied initially on February 26, 2018, and upon reconsideration on July 11, 2018 (Tr. 11, 204, 205, 234, 235). On August 11, 2018, Plaintiff filed a written request for hearing (Tr. 11, 278-79).

On December 5, 2019, Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 11, 76). Plaintiff and his counsel, Sara J. Martin Diaz, participated from Owensboro, Kentucky (*Id.*). Plaintiff testified during the hearing (*Id.*). Theresa Wolford, an impartial vocational expert, testified during the hearing (*Id.*).

At the request of Plaintiff, on June 2, 2020, the ALJ conducted a supplemental telephonic hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 11, 105). Plaintiff and his counsel, Sara J. Martin Diaz, participated and Plaintiff testified (*Id.*). Sharon Lane, an impartial vocational expert, testified during the hearing (*Id.*). During the supplemental hearing, Plaintiff amended his alleged onset date to March 10, 2017 (Tr. 11).

In a decision dated July 13, 2020, the ALJ evaluated his disability claims pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-24). More specifically, the ALJ determined that Plaintiff has several severe impairments but they did not meet or medically equal one of the listed impairments in Appendix 1 (*Id.*). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with the following additional limitations: he can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch and crawl; he can have occasional exposure to extreme cold and extreme heat, but no exposure to vibration, moving mechanical parts or unprotected heights; he can understand,

remember and carryout simple routine tasks; he can sustain concentration, persistence and pace for the completion of simple routine tasks; and he can have occasional interaction with coworkers and supervisors, but no interaction with the public (Tr. 16). Due to no past relevant work, the ALJ proceeded to the fifth step where she considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24). The ALJ found Plaintiff capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 10, 2017, the alleged onset of disability through July 13, 2020, the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 435-438). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

Before this Court, Robbins timely filed a complaint appealing the final decision of the Commissioner (DN 1). Subsequently, the Court granted Defendant's unopposed motion to remand the case, pursuant to sentence six of 42 U.S.C. § 405(g), for further proceedings due to irregularities in the hearing recording process (DN 10 PageID # 51-52; DN 11).

On August 3, 2022, the ALJ conducted a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 1635). Plaintiff and her attorney, Nathan Bishop, participated and Plaintiff testified (Tr. 1662). Robert J. Beadles participated and testified as well (*Id.*). On December 23, 2022, the ALJ issued an unfavorable decision (Tr. 1635-49).

At step two, the ALJ found that Plaintiff has the following severe impairments: status post liver transplant at age 2 due to alpha-1 antitrypsin deficiency; chronic kidney disease due to IgA

nephropathy; myalgia; chronic immunosuppression; obesity; migraines; depression and ADHD (Tr. 1638). At step three the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment (Tr. 1638).

At step four, the ALJ found Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except Plaintiff is: limited to never climbing ladders, ropes, or scaffolds; limited to occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; limited to occasional exposure to temperature extremes; limited to no vibrations, moving mechanical parts, or unprotected heights; he can understand, remember, and carry out simple instructions, and maintain concentration, persistence, and pace for performance of simple tasks; he can have occasional interaction with coworkers and supervisors for task completion only, no tandem work, and no interaction with the general public; and he can adjust to occasional changes in simple work environment (Tr. 1640).

As Plaintiff has no past relevant work, the ALJ proceeded to the fifth step (Tr. 1648). Considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ found Plaintiff his able to perform jobs that exist in significant numbers in the national economy (Tr. 1648-49). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from the allege onset date, March 10, 2017, through the date of the decision, December 23, 2022 (Tr. 1649).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 1839-41). The Appeals Council denied Plaintiff's request for review (Tr. 1620-21).

On November 8, 2024, the parties advised the Court that the ALJ issued a new decision in which she found Plaintiff not disabled (DN 14 PageID # 64). The parties requested and the Court

granted a reopening of the case and set a briefing schedule (DN 14, 17).  As briefing by the parties is complete, this matter is ripe for determination.

### III.    CONCLUSIONS OF LAW

#### A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1620-21).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

### B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. §§ 404.1520(a)(4)(i) - (v), 416.920(a)(4)(i) - (v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

### C. Finding No. 5

#### 1. *Arguments of the Parties*

Plaintiff mounts a two-fold challenge to the ALJ's physical RFC determination (DN 18-1 PageID # 2660, 2662-66).   First, Plaintiff takes issue with the ALJ's persuasiveness assessments of the medical opinions from his treating physicians (*Id.*).   Next, Plaintiff quarrels with the ALJ's failure to include absenteeism in the physical RFC determination (*Id.*).

Defendant asserts that the ALJ appropriately assessed the persuasiveness of each medical opinion based upon its consistency and supportability with the medical and other evidence of record (DN 19 PageID # 2673-74).   Defendant argues the ALJ appropriately found the treating physician's letter did not constitute a "medical opinion" under the regulations because it fails to offer impairment-related limitations or describe what Plaintiff is able to do despite his conditions (*Id.* at PageID # 2675-76) (citing Tr. 1614; 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)).   Defendant contends the ALJ properly assessed Plaintiff's subjective complaints that could cause absenteeism but concluded they were not entirely consistent with the medical and other evidence in the record (*Id.* at PageID # 2678-79).

Plaintiff's reply essentially reiterates his position regarding the ALJ's persuasiveness assessment of the medical opinions expressed by the two treating sources (DN 20 PageID # 2684-85).

##### 2. *Applicable Law*

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The ALJ make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination, the ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess Plaintiff's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings[4] are applicable to Plaintiff's case because he filed his applications after March 27, 2017 (Tr. 11, 465-68, 469-78). *See* 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ now evaluates the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).

---

[4] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). The ALJ "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

[5] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires that the ALJ explain how she considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Notably, under the regulations the ALJ "may, but [is] not required to, explain how" she considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must, however, articulate how she considered the three other factors—in paragraphs (c)(3) through (c)(5) of the regulation—when she finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) applies. First the ALJ must examine whether there is objective medical evidence of an underlying medical

---

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

9

condition. If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When, as in this case, the reported symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ should consider other information and factors which may be relevant to the degree of symptoms alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 3. *Discussion*

Plaintiff's challenge is limited to the ALJ's physical RFC findings. Specifically, Plaintiff asserts that the ALJ erred: (1) in not finding the medical opinions expressed by two of his treating physicians to be persuasive; (2) by improperly considering and articulating the persuasiveness of those medical opinions; (3) in not finding the medical opinions of those two treating physicians supported by and consistent with substantial medical evidence; and (4) in not including absenteeism in the physical RFC finding (DN 18-1 PageID # 2660). The two treating physicians are: (1) Dr. William H. Fissell, who is Plaintiff's treating specialist at Vanderbilt University's Nephrology/Renal Transplant Clinic in Nashville, Tennessee; and (2) Dr. Susan Martin, who is Plaintiff's primary care physician at Deaconess Health System's Clinic in Rockport, Indiana.

The first document at issue is identified in the Court Transcript Index as Exhibit No. "26F - Treating Source Statement, dated 06/29/2020, from Dr. WILLIAM FISSELL" (DN 15). It is a letter from Dr. Fissell to Plaintiff explaining the role of renal disease in causing Plaintiff's symptoms: fatigue, trouble concentrating, and exercise intolerance (*Id.*). Dr. Fissell's explanation includes information from a New England Journal of Medicine article discussing the degree to

which a patient's quality of life is impaired by a glomerular filtration rate ("GFR") below 60 ml per minute per 1.73 m$^2$ of body surface area (*Id.*). In pertinent part, Dr. Fissell's letter reads:

> You have not only renal disease due to IgA nephropathy with a GFR < 60, but you also have a liver transplant and are taking immunosuppressive drugs, such as sirolimus, which themselves have an ensemble of side effects as well. I suspect that your actual GFR is not the 55 ml/min listed, but is actually closer to 40, as you have a body habitus that is small for your age, due to your childhood illness. I hope this helps you in interpreting the symptoms you are experiencing.

(*Id.*). The ALJ concluded "there was no opinion to consider" in Dr. Fissell's letter (Tr. 1647).

Plaintiff argues the ALJ erred in failing to treat Dr. Fissell's letter as a medical opinion and evaluate its persuasiveness under 20 C.F.R. §§ 404.1520c and 416.920c (DN 18-1 PageID # 2662-63). Plaintiff contends that Dr. Fissell "opined as to the side effects of immunosuppression therapy impacting Plaintiff's ability to work" (*Id.* at PageID # 2665). The Court disagrees with Plaintiff's position.

In pertinent part, the regulations define a medical opinion as "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions in . . . [his] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ." 20 C.F.R. §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). By contrast, the regulations do not expressly require the ALJ to evaluate "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's]

11

impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

There is a difference between the comments in Dr. Fissell's letter—addressing the nature of the symptoms and side effects Plaintiff may be experiencing—and an opinion that specifically addresses Plaintiff's limitations in performing work activities as a result of his impairments and the side effects of the immunosuppressive drug.  *See, e.g., Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at *5-6 (E.D. Mich. Jan. 18, 2022) (explaining the difference between a doctor's observation upon objective examination and an opinion that describes what a claimant can do despite the impairments).  Even assuming the comments in Dr. Fissell's letter include observations from objective medical evidence, they do not constitute medical opinions within the meaning of the regulations, and, thus, the ALJ was not required to consider the comments' persuasiveness.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Rather, the ALJ properly considered Dr. Fissell's comments as other medical evidence, *see* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3), which the ALJ clearly discussed and properly considered (Tr. 1643, 1637). Accordingly, there is no merit to Plaintiff's claim that the ALJ erred in failing to treat Dr. Fissell's letter as a medical opinion and evaluate its persuasiveness under 20 C.F.R. §§ 404.1520c and 416.920c.

Relatedly, Plaintiff claims the ALJ erred because she did not acknowledge that Dr. Fissell is a treating specialist and consider two additional factors (relationship and specialization) in assessing the persuasiveness of the opinion (DN 18-1 PageID # 2664-65) (citing 20 C.F.R. §§ 404.1520c(b)(4), 416.920c(b)(4)).  But the ALJ did acknowledge that Dr. Fissell was the treating nephrologist (Tr. 1642).  Additionally, if Dr. Fissell had rendered a medical opinion

12

within the meaning of the regulations, the ALJ would have only been required to articulate how she considered the supportability and consistency factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The next two documents at issue are identified in the Court Transcript Index as Exhibit No. "12F - Medical Source Statement, dated 03/16/18 from Susan M Martin, MD" and Exhibit No. "23F – Treating Source Statement, dated 01/03/2020, from Dr. SUSAN MARTIN" (DN 15). Exhibit 12F is a medical assessment form that Dr. Martin filed out on March 16, 2018 (Tr. 1242-43). It lists the following dates of treatment: December 28, 2017, October 30, 2017, August 28, 2017, and March 31, 2017 (Tr. 1242). After identifying Plaintiff's diagnosed conditions, Dr. Martin opined that Plaintiff is not capable of performing sedentary work activity on a sustained basis (Tr. 1242-43). Notably, Dr. Martin does not provide an explanation supporting her opinion.

Exhibit 23F is a letter from Dr. Martin dated January 31, 2020 (Tr. 1557). Dr. Martin explains why she disagrees with the medical opinion rendered by a non-examining medical consultant, Dr. Michael Jacobs (Tr. 1557).[7] In pertinent part Dr. Martin's letter reads:

> Dr. Jacobs properly recognizes that Seth has a history of liver transplant and suffers ongoing chronic kidney disease. However, he goes on to state that there is no supporting evidence that Seth's kidney or liver diseases lead to disability. This is not true. Dr. Jacobs oversimplifies Seth's very complex health condition which requires immunosuppression therapy. This makes Seth very

---

7 On December 5, 2019, the ALJ provided a copy of the medical evidence to Michael Jacobs, M.D., Ph.D., in an effort to obtain a better understanding of the medical evidence concerning Plaintiff's physical impairments (Tr. 1532-43, 1646). Dr. Jacobs responded on December 16, 2019 (Tr. 1544-55). In context of opining that Plaintiff does not meet or medically equal listings 5.05 (chronic liver disease) and 6.05 (chronic kidney disease), Dr. Jacobs also opined there is no supporting evidence that Plaintiff's liver and kidney issues are leading to disability (Tr. 1545-47). Additionally, Dr. Jacobs filed out parts of a form used to assess a claimant's ability to do physical work-related activities (Tr. 1548-53). Dr. Jacobs relied on statements, from Plaintiff and his mother, to opine that Plaintiff could: sit for six hours, stand for three hours, and walk for three hours in an eight-hour workday; and occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl (Tr. 1549, 1551) (citing Tr. 514-23, 524-32). Dr. Jacobs indicated the record was not adequately developed for him to render an opinion concerning whether any hand, feet, hearing, sight, or environmental limitations should be imposed (Tr. 1550, 1551, 1552).

> susceptible to illness and also means illnesses will affect him more severely than others. This is a significant reason why he has not been able to work consistently or attend school. Absenteeism is and will continue to be a chronic problem for Seth. I did not see where Dr. Jacobs considered this, at all, which is a tremendous oversight given that Seth's immunosuppression medications are a huge part of his healthcare and this is a known side effect.
>
> Also, Dr. Jacobs' report minimizes Seth's fatigue and chronic pain. These are very real and serious symptoms that Seth suffers from on a regular basis. There are good days with these symptoms and bad days. However, Seth's condition and the known side effect of his immunosuppression medicine result in the pain and fatigue being more often than not. It is important to remember these are things that Seth has lived with for nearly his entire life. He has a high tolerance for pain and discomfort so if Seth is reporting that these symptoms are limiting his ability to function it is serious.
>
> Seth has always been credible and compliant with my treatment. He is very pleasant and bright. It is unfortunate he has to manage such severe health conditions at such a young age. However, if he were to attempt working full-time in any setting things would only get worse, as they have before. He would unquestionably get sick on a regular basis and the fear is that at some point: his body would be overwhelmed by that and could succumb to a secondary infection of some sort. Seth's life is simply not worth that risk and it is highly unlikely any employer will tolerate the level of absenteeism that will undoubtedly occur on a regular basis several times a month.

(*Id.*).

The ALJ discussed Exhibits 12F and 23F, and then assessed the persuasiveness of Dr. Martin's opinion (Tr. 1646-47). Specifically, the ALJ's analysis reads:

> After careful consideration of all the evidence, Dr. Martin's opinion is not persuasive because it is not consistent with or supported by the evidence. There is no evidence of additional illness via emergency room. There is no evidence of consistent complaints besides fatigue. As discussed earlier, the residual functional capacity has been reduced to allow for limitations due to his fatigue and immunosuppression. While he would likely have difficulty

> with absenteeism in certain work environments, there is nothing suggesting he would be unable to perform a range of work as described above.

(Tr. 1647).

Plaintiff posits that the ALJ failed to properly weigh the persuasiveness of Dr. Martin's opinion (DN 18-1 PageID # 2662-65).[8]  Plaintiff contends that "Dr. Martin's opinion, based upon the direction of Dr. Fissell as the primary care physician to Plaintiff, is extremely detailed and specifically states why Plaintiff would be frequently absent from the workplace due to his medical conditions and the side effects of his immunosuppression therapy" (DN 18-1 PageID # 2665). For the reasons that follow, the Court disagrees with Plaintiff's position.

The ALJ's summary of the medical evidence included discussion of Plaintiff's symptoms, treatment, and treatment related side effects due to his liver transplant, immunosuppression medicine, stage II chronic kidney disease, diabetes, and obesity (Tr. 1642-44) (citing Exhibits 1F, 3F-7F, 9F, 10F, 15F 16F, 18F, 26F, 30F, 32F, 33F, 36F, 37F, 39F, 40F). The ALJ's discussion of the symptoms/side effects includes renal complications (renal cysts, hematuria, and proteinuria)[9], intermittent episodes of fatigue accompanied by a variety of other symptoms (muscle joint pain, heart racing, nausea, dizziness and abnormal pain), and intermittent illnesses (Tr. 1642-44) (citing Exhibits 1F, 3F-7F, 9F, 10F, 15F, 16F, 18F, 26F, 30F, 32F, 33F, 36F, 37F, 39F, 40F). Additionally, the ALJ identified physical RFC restrictions she deemed appropriate to address

---

[8] Plaintiff also claims the ALJ failed to consider Dr. Martin's treating relationship as a factor in assessing the persuasiveness of the opinion (DN 18-1 PageID # 2664-65) (citing 20 C.F.R. §§ 404.1520c(b)(4), 416.920c(b)(4)). To the contrary, the ALJ acknowledged that Dr. Martin is the treating primary physician (Tr. 1646). But the ALJ was not required to consider this as a factor in assessing the opinion's persuasiveness because she did not find Dr. Martin's opinion was one of two or more medical opinions about the same issue that were equally well supported and consistent with the record but not exactly the same.  *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

[9] Hematuria is the presence of blood in the urine, and proteinuria is the presence of an abnormally high amount of protein in the urine.

15

Plaintiff's symptoms and treatment related side effects (Tr. 1642-44).[10]  The ALJ referred to this evidence in determining that Dr. Martin's opinion is not consistent with or supported by the evidence.  Consequently, the ALJ's persuasiveness finding as to Dr. Martin's opinion is supported by substantial evidence.  Further, it comports with the applicable regulations because the ALJ explained how the supportability and consistency factors were considered in determining the persuasiveness of this medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Plaintiff also makes a general assertion that the ALJ "supplanted the opinions of all medical providers with her own as no medical opinion was found to be persuasive" (DN 18-1 PageID # 2664).  But Plaintiff seems to overlook the two prior administrative medical findings made by state agency medical consultants following remand (Tr. 1708-10, 1723-24).  As these opinions were issued on September 19, 2021 and December 7, 2021, the state agency medical consultants had the opportunity to consider the letter from Dr. Fissell as well as the medical assessment form and letter from Dr. Martin (*Id.*).  Both medical consultants opined that Plaintiff could perform a range of sedentary work with no climbing of ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional stooping, kneeling, crouching and crawling; avoid even moderate exposure to extreme cold and hot; and avoid all exposure to hazards (machinery, heights, etc.) (*Id.*).  The ALJ considered their opinion and indicated:

---

10 For example, to address Plaintiff's complaints of fatigue, the ALJ restricts him to simple, sedentary work activity that for safety reasons includes the restrictions: "should never climb ladders, ropes, or scaffolds and should avoid all exposure to moving, mechanical parts and unprotected heights" (Tr. 1642).  To address Plaintiff's complaints of illnesses arising from immunosuppression and sensitivity to heat, the ALJ indicates "no interaction with the general public and only occasional interaction with coworkers and supervisors" and "only occasional exposure to extreme heat or extreme cold (Tr. 1642-43).  Additionally, in the context of assessing Plaintiff's physical RFC, the ALJ recognizes that his myalgia causes difficulty performing strenuous work or requires frequent postural movements, and "he should avoid work that involves exposure to vibration" (Tr. 1643).

> They supported it with their review of the medical evidence of record. This is consistent with and supported by the medical evidence of record documented above which accommodates all of his impairments (Exhibits 13A; 16A).

(Tr. 1645). The above comments strongly suggest the ALJ implicitly found the opinion persuasive. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). This conclusion appears to be reinforced by the ALJ's physical RFC determinations (*compare* Tr. 1708-10, 1723-24 *with* Tr. 1640). Thus, contrary to Plaintiff's accusation, the ALJ did not inappropriately play doctor in making the physical RFC findings.

Finally, Plaintiff alleges that the ALJ erred in not including absenteeism in the physical RFC findings. But Plaintiff primarily relies on his subjective statements and the opinion expressed by Dr. Martin. As explained above, the ALJ did not find Dr. Martin's opinion persuasive because it was inconsistent with or lacked the support of the underlying medical evidence in the record which included Dr. Martin's own treatment notes (Tr. 1647). Additionally, Plaintiff's brief does not cite specific treatment notes in the record that substantiate his position concerning the frequency of his illnesses. As Plaintiff's reported symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ considered other information and factors in the record that might be relevant to the degree of symptoms alleged by Plaintiff (Tr. 1644). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, the ALJ considered comments in treatment records concerning Plaintiff's activities during the relevant time frame (*Id.*) (citing Exhibits 3F, 7F, 15F, 33F/13). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also considered inconsistencies in the evidence and the extent to which there are conflicts between Plaintiff's

17

statements about his symptoms and comments set forth in the treatment records (*Id.*) (citing Exhibits 3F, 7F, 15F, 33F/13). The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer symptoms to the extent he testified (*Id.*). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the symptoms alleged. Since tolerance of symptoms is a highly individualized matter, the conclusion of the ALJ, who had the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly." *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (citing *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings are supported by substantial evidence and comport with applicable law. *See* 20 C.F.R. §§ 404.1529, 416.929.

## IV. CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## V.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

June 4, 2025

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel